UNITED STATES of America

v.

**Edward TUNICK, a/k/a Steven Wynn; a/k/a Gene Reynolds; a/k/a Eddie; a/k/a Ralph Williams**

Edward B. Tunick, Appellant.

No. 01–3731.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
LAR 34.1(a) Sept. 9, 2002.

Filed Sept. 26, 2002.

Before NYGAARD, ROTH, and WEIS,
Circuit Judges.

OPINION OF THE COURT

NYGAARD, Circuit Judge.

Appellant, Edward Tunick was convicted by a jury of nine counts of mail fraud, in violation of 18 U.S.C. § 1341 and one count of money laundering conspiracy, in viola-

tion of 18 U.S.C. § 1956(h). Tunick presents six issues on appeal. We will affirm the judgment, but we remand to the District Court with instructions to modify the restitution order.

■ First, Tunick contends that he was deprived of his fifth amendment right to a fair trial when the court refused to give his requested jury instructions concerning "charging high prices" and "not disclosing pricing structure." Because Tunick failed to object to the charge as given, we review for plain error. Unlike the cases upon which Tunick relies, Tunick did not request an instruction involving an affirmative defense to the charges. Tunick was permitted to argue his defense theories, and the court instructed the jury on fraud on criminal intent, which permitted Tunick to make the same points in closing as were contained in the requested instructions. Viewing the jury charge as a whole, the District Court correctly instructed the jury as to reasonable doubt, the burden of proof, the presumption of innocence, good character, good faith, criminal intent, and the essential elements of the offenses. Thus, there was no miscarriage of justice in this case, and no plain error.

Second, Tunick argues that there was insufficient evidence to support his conviction for conspiracy to commit money laundering. Considering the evidence in the light most favorable to the government we find that there is sufficient evidence to prove that Tunick was guilty of conspiracy, and sufficient evidence to show that Tunick and his partner conspired to engage in money laundering.

■ Third, Tunick claims that the District Court committed plain error by submitting to the jury an indictment with references to an allegation not in evidence. If submitting the indictment to the jury was error, it was not prejudicial. The District Court's explicit warning to the jury that the indictment was not evidence cured any potential for prejudice created by giving the indictment to the jury. Moreover, overwhelming evidence of Tunick's guilt supported the jury's verdict. We believe that if the District Court committed error when it submitted the unredacted indictment to the jury, beyond doubt it was harmless.

Fourth, Tunick asserts that the District Court erred in its response to the jury's question on money laundering. The jury asked: "In the law for money laundering, must the defendant know that the source of the funds was derived from an illegal act? Not simply from an act to defraud, which in their minds may or may not have been legal?" The court answered "Yes" to this question, but Tunick contends that the government had to show more than simply that the Appellant knew that the funds were derived from an "illegal act." He argues that the Government must prove that he knew that the source of the funds was derived from specifically the mail fraud. This is not the law. The government only has to show that the proceeds were from some form of unlawful activity. The District Court's reply was therefore proper.

■ Fifth, Tunick contends that the District Court erred by applying the money laundering guidelines, as opposed to the mail fraud guidelines, to determine his sentence. We find that this case is a heartland money laundering case, as interpreted in *United States v. Smith*, 186 F.3d 290, 297 (3d Cir.1999).

Appellant contends that "the money laundering statute and the related guidelines were intended to attack organized crime and the large-scale drug traffickers, not insignificant participants in, and acts related to mail fraud schemes." Again, this is simply not the law. Rather, we

explicitly stated in *United States v. Omoruyi* that we had "rejected a reading of *Smith* that would limit the use of the money laundering guidelines only to cases involving the proceeds of drug trafficking and organized crime." 260 F.3d 291, 300 (3d Cir.2001). The money laundering guidelines do apply.

■ Finally, Tunick raises the issue of whether the restitution was proper. The Mandatory Victims Restitution Act, passed by Congress in 1996, requires the District Court to order the payment of restitution in the full amount of the victim's losses "without consideration of the economic circumstances of the defendant." *United States v. Coates*, 178 F.3d 681, 683 (3d Cir.1999). We dismiss the objections to the restitution that Tunick raises.

However, we direct the District Court to modify the restitution order by making the restitution obligation joint and several. In the instant case, although a co-defendant, David Fleisher, was also subjected to an order of restitution, the District Court imposed restitution based on the full amount of the loss. The District Court may "impose joint and several liability on multiple defendants for restitution, permitting the victim to recover its losses from all or some of the wrongdoers." *United States v. Diaz*, 245 F.3d 294, 312 (3d Cir.2001).

The judgment of the District Court will be affirmed. We remand to the District Court with instructions to modify the restitution order by making the obligation joint and several.